UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-20144-cr-ALTONAGA

UNITED STATES OF AMERICA,

vs.

ROBINSON ALBERTO CASTRO QUINONES,
    *Defendant.*
_____/

### DEFENDANT ROBINSON ALBERTO CASTRO QUINONES' MOTION FOR DOWNWARD VARIANCE FROM THE ADVISORY SENTENCING GUIDELINES WITH INCORPORATED MEMORANDUM OF LAW

    The Defendant, ROBINSON ALBERTO CASTRO QUINONES, (hereinafter Mr. Castro Quiñones) by and through undersigned counsel and pursuant to Rule 32 of the Federal Rules of Criminal Procedure and 18 U.S.C § 3553(a), respectfully requests that this Honorable Court consider the following in granting a downward variance and sentence him below the Advisory Sentencing Guidelines to a maximum period of incarceration of forty eight (48) months of incarceration.  Mr. Castro Quiñones has been debriefed on numerous occasions and has provided valuable information.  It is anticipated that the government will also be moving this Court to depart from the sentencing guidelines based on Mr. Castro Quiñones substantial cooperation.

    Robinson Alberto Castro Quiñones appears before this Court to be sentenced. Unquestionably, the most solemn duty of any judge presiding in criminal court is the responsibility, or some would say burden, of determining a legal and just sentence for a person who has committed a crime.  Mr. Castro Quinones' expeditious plea of guilty after

having been formally charged, his acceptance of responsibility, and his minimal role in the charged conspiracy, are important factors that should play a significant role in determining his sentence. However, it is incumbent on Mr. Castro Quiñones and undersigned counsel, to provide as much additional information to this Court concerning him as an individual, his background, his profound shame, and the desperation that led him to commit this crime, in order to individualize him and put him and his crime in the proper perspective so that the Court may make an informed decision regarding his sentence.

This request for a variance complies with the sentencing procedures that have developed both since the United States Supreme Court's decisions in *United States v. Booker*, 543 U.S. 220 (2005) and *Gall v. United States*, 552 U.S. 38 (2007) and those adopted by the Eleventh Circuit of Appeals in *United States v. Livesay*, 525 F.3d 1081, 1089-90 (11th Cir. 2008) and *United States v. Pugh*, 515 F.3d 1179, 1188-91 (11th Cir. 2008). In particular, the holdings in *Gall* and its companion case, *Kimbrough v. United States*, 552 U.S. 85 (2007), provide that were warranted and justified by the circumstances, the courts can impose sentences that substantially vary downward from the advisory guideline range utilizing the statutory factors of 18 U.S.C § 3553(a). The Eleventh Circuit has repeatedly affirmed the decisions of the district courts to grant motions for downward variances. Illustrative cases are: *United States v, Clay*, 483 F.3d 739 (11th Cir, 2007) (affirming a sentence of 60 months even though the guidelines were 188-235 months); *United States v. Gray*, 453 F.3d 1323 (11th Cir. 2006) (affirming a sentence of 72 months even though it was less than half of the guideline range which was 151 to 188 months); and *United States v. Williams*, 435 F.3d 1350 (11th Cir. 2006

(affirming a sentence of 90 months even though the advisory guidelines ranged from 188-235 months).

In Title 18 U.S.C. § 3553(a), Congress mandated that the courts "impose a sentence sufficient, but not greater than necessary to comply with "federal sentencing goals. *See Kimbrough v. United States*, 552 U.S. 85, 101 (2007). The § 3553(a) factors that a district court must consider include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. §3553(a)(1)-(7).

When applying these factors to a particular sentence, "[t]he weight to be accorded any given any § 3553(a) factor is a matter committed to the sound discretion of the district court [,]" and we "will not substitute our judgment in weighing the relevant factors because 'our review is not de novo.' " *United States v. Williams*, 456 F.3d 1353, 1363 (11th Cir.2006) (citation and alteration omitted), cert. dismissed, 127 S.Ct. 3040, (2007), abrogated on other grounds, *Kimbrough v. United States*,552 U.S.85, 128 S.Ct. 558, 169 L.Ed. 2d 481 (2007). However, "nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the section

3553(a) factors or to discuss each of the section 3553(a) factors." *United States v. Scott*, 426 F.3d 1324,1329 (11th Cir.2005).

Finally, the court "may not presume that the [advisory] Guidelines range is reasonable." *Gall*, 552 U.S. at 50. Thus, after making an "individualized assessment" of the § 3553(a) factors based on the facts presented, *Id.*, the sentencing court is empowered to grant a variance below the advisory guidelines range, to whatever extent the court deems warranted by those facts. *Gall*, 552 U.S. at 50-51; *Livesay*, 525 F.3d at 1090; *McBride*, 511 F.3d at1297-98. If the sentencing court decides that the facts and the § 3553(a) factors warrant a downward variance, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

### A. The Offense and the Offender:

In support of this motion, the facts as previously adopted in the plea agreement are undisputed. However, we did file an objection in a separate motion requesting that he receive a reduction of two points for having a "minor role" in the drug conspiracy to which he pled guilty. The advisory sentencing guidelines in the Presentence Investigation Report (PSIR) have a Total Offense Level at 33 which is a sentencing range of between 135 to 168 months of incarceration.

Mr. Castro Quiñones is a thirty-nine year old illiterate fisherman from Tumaco, one of the poorest and most undeveloped regions of Colombia. *See Exhibit 1*. Having never met his father who abandoned his family, Mr. Castro Quiñones, was forced to abandon his schooling after barely completing the equivalent of second grade and at the tender age of five years old find work as a fisherman or as a field hand. His mother,

maternal grandparents, and his siblings depended on him from a very young age.

Learning how to be a fisherman from his grandfather, Mr. Castro Quiñones, worked tirelessly and was able to save enough money eventually to buy his own fishing boat. Despite his meager earnings, by even Colombian standards, he lived to work and to support his family. Although otherwise uneducated, he gained the self-respect so many entrepreneurs experience at being able to support themselves. However, in 2009, Tumaco was at that time under the control of the Fuerzas Armadas Revolucionarias de Colombia (FARC), a Colombian communist guerrilla group responsible for over 200,000 deaths. He was forced to flee the only home he knew with his wife and children and abandon his profession because he received death threats for refusing to work with the FARC. He relocated to Cali, Colombia and opened a restaurant where both he and his wife cooked catering to agricultural or day laborers. However, in 2014, Vanessa, one of his daughters, was diagnosed with Lupus, an inflammatory disease caused when the immune system attacks its own tissues. After six years of struggling financially and now facing the prospect of having to pay for extraordinarily expensive treatments, Mr. Castro Quiñones decided to return to Tumaco and try to revive his fishing business. A decision which eventually led him to appear before this Court.

While in Tumaco Mr. Castro Quiñones made every attempt to reestablish his fishing business but the financial pressure was too much and he agreed to the entreaties of one of his codefendants and the ring leader of this charged conspiracy, Edison Washington Prado Alava.

Because of Mr. Castro Quiñones' ability to operate boating vessels and navigate the coastline of Tumaco, Mr. Prado Alava proposed that he transport boat crews to go-

fast vessels (GFV) which were offshore and which were loaded with cocaine. He did this on multiple occasions and always at the direction of Mr. Prado Alava. The money he was paid was used for his daughter's medical treatments and his and his family's expenses. As the PSIR states in paragraph 54 and 57, Mr. Castro Quiñones income was approximately $380.00 per month and he lived in his grandmother's home which he purchased with other relatives. The value of that home is approximately $1,500.00.

As has been demonstrated by the PSIR and the various discovery exhibits, Mr. Castro Quiñones, although participating in this conspiracy, by no means profited greatly or lived a luxurious and material lifestyle commiserate with the many drug traffickers this Court has had to sentence. Mr. Castro Quiñones was desperate and his decision to participate in this conspiracy has resulted and will result in him being incarcerated in a foreign prison away from his family that neither has the means to travel to the United States or obtain the necessary visas. Whatever sentence this Court determines is just will also be a sentence for his family.

This motion should not in any way be interpreted as an attempt to minimize or gloss over the crime to which he pled guilty. However, this is an effort to explain Mr. Castro Quiñones' conduct, to put it in the proper context, and to provide this Court with an understanding as to the facts and circumstances that resulted in his appearing before this Court for sentencing.

**Applicable 18 U.S.C § 3553(a) Factors:**

Undersigned counsel submits that following factors are applicable in this case and should be taken into consideration by this Court:

18 U.S.C § 3553(a)(1) states the Court shall consider "the nature and circumstances of the offense and the history and characteristics of the defendant." The crime that Mr. Castro Quiñones committed is serious but one which nevertheless should not be judged in the abstract. To begin with, and perhaps most importantly, Mr. Castro Quiñones offense did not involve any type of violence or the use of a weapon. Certainly that is an important factor in determining whether someone deserves to be incarcerated. Second, Mr. Castro Quiñones participation in this conspiracy was as the transporter of boat crews from Tumaco to GFVs at sea. Mr. Castro Quiñones did not "coordinate" the movement of crews as stated in the PSIR, but rather, he did as was ordered by Mr. Prado Alava. He was told where to pick up the boat crews and where to take them. For all intents and purposes, Mr. Castro Quiñones was a taxi or Uber driver-he was paid to transport boat crews only. Mr. Castro Quiñones did not engage in the business of drug trafficking, he did not load or unload or otherwise handle drugs, he did not select routes, shipments or payments. Taking into account Mr. Castro Quiñones' role in this offense and his unblemished history, it can be said that the commission of this crime was truly out of character.

18 U.S.C § 3553(a)(2)(A) states that this Court's sentence should "…reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment…" A sentence of forty eight (48) months of federal incarceration followed by a period of supervised release would achieve these goals. Mr. Castro Quiñones will one day return to Tumaco but not as a fisherman but as a convicted felon. His conduct will not only result in him being incarcerated in a foreign prison but also to be away from his beloved family and without the ability to support them. 18 U.S.C § 3553(a)(B) also

states that the sentence should provide "…deterrence to criminal conduct. The community Tumaco is quite small and his extradition is a well-known fact. The sentence we are requesting will both punish Mr. Castro Quiñones while at the same time be a deterrent to others who may be contemplating engaging in the same conduct.

18 U.S.C § 3553(a)(C) provides that the sentence should "…protect the public from further crimes of the defendant." In light of the Mr. Castro Quiñones' character, contrition, and cooperation with the authorities, we submit that the Court should have absolutely no concern that he would ever commit another criminal offense. The public either in the United States or in Tumaco does not need to be protected from Mr. Castro Quiñones.

The last factor that the Court should consider is 18 U.S.C § 3553(a)(6). This provision takes into account the sentences of codefendants, which were decided by this Court. In this case, Mr. Prado Alava, who was the ring leader of this conspiracy was sentenced to two hundred thirty five (235) months of incarceration. *See Docket 92*. Another codefendant, Diego Fernando Arizala Segura was sentenced to seventy six (76) months of incarceration. *See Docket 83*. Mr. Arizala Segura's sentence is significant because unlike Mr. Castro Quiñones, he was responsible for providing security for the drug shipments and protecting the profits for Mr. Prado Alava. Comparing the conduct of Mr. Castro Quiñones to his codefendants, it is our respectful request that he receive a lower sentence.

In conclusion, this Court is faced with an important decision. However, the Court's sentence will be most important and consequential to one person, Robinson Castro Quiñones. Too often we forget that the decisions made by the courts, the

8

prosecution, and even a defense lawyer, can have permanent and life-changing effects on an individual. Mr. Castro Quiñones appears before this Court filled with remorse and shame for what his conduct has wrought. Although an illiterate fisherman, as is demonstrated by the way he has signed his name to the plea agreement and statement of facts filed in this matter, he is still capable of regretting his actions and the consequences to not only his liberty but to his family's ability to survive without him. *See Exhibit 2*. Mr. Castro Quiñones and undersigned counsel request that this Court impose the sentence that has been requested of forty eight (48) months of incarceration which would be a severe punishment and justified by his true role and minimal gain from his participation in the charged crime.

Respectfully submitted,

/s/ Eric C. Padrón

Eric C. Padrón, Esq.
Counsel for the Defendant
FL. Bar No.: 107840
1900 Coral Way, Suite 202
Miami, Florida 33145
Tel: 305.461.0095
ECP@ECPadronlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed this 26th day of March 2019 and served on all parties of record via the CM/ECF system.

/s/ Eric C. Padrón
Eric C. Padrón, Esq.